[No. 7161.   Decided April 22, 1908.]

JAMES COLEMAN, *Respondent*, v. MARTIN L. LARSON, *Appellant*.[1]

SPECIFIC PERFORMANCE—GIFTS—PROMISE TO CONVEY LAND—AC-CEPTANCE BY ACTING UPON. A letter written to a brother in Califor-nia asking "if he would be willing to make" his home with the writer in consideration of a deed of her home in Washington, sup-plemented by another setting forth the serious illness of the donor and urging him to come to her for the purpose of settling up her affairs, and which was accepted by letter as a gift on the condi-tions named, is a promise to make a gift which will be specifically enforced, when acted upon by the donee, with possession taken, and material changes made in his condition on the faith thereof.

SAME—INTENT OF DONOR—EVIDENCE. The fact that, after the arrival of the brother, the donor made him a deed of a portion only of the property, and attempted to sell the balance against his pro-tests, would not show that she only intended to promise to give him part of the two lots on which the house was situated, where the entire lots were described in the first offer.

SAME—ESTOPPEL—ACCORD AND SATISFACTION. In such a case, the donee would not be estopped to assert his right to specific perform-ance as to the whole tract, as against the donor's executor, by the acceptance and recording of a deed of part of the tract, delivered by the executor after the death of the donor, the donee having had no previous knowledge of such deed, and not accepting the same as a full settlement.

Appeal from a judgment of the superior court for King county, Albertson, J., entered October 14, 1907, upon find-ings in favor of the plaintiff, after a trial on the merits be-fore the court without a jury, in an action for specific per-formance.   Affirmed.

*Andrew J. Balliet* and *James Kiefer*, for appellant.

*Bo Sweeney*, for respondent.

FULLERTON, J.—This is an action brought to enforce an agreement for a gift of real property.   In brief, the facts

[1]Reported in 95 Pac. 262.

are these: In the latter part of the year 1906, one Mary Janson was the owner of lots 1 and 2, in block 3, of Queen Anne's Second Addition to the city of Seattle. The lots lay side by side and together made a tract 60 by 120 feet in size. There was but one house on the lots. This had been moved from the front to the rear 40 feet of the lots, leaving a space on the front 60 by 80 feet in size unoccupied. Mrs. Janson made her home in the house. She was well advanced in years, and in very poor health. The respondent in this action was her brother. He was then residing in the state of California, was possessed of a large family, and was in very poor circumstances financially. Anticipating her own death, and desiring to do something to ameliorate her brother's condition, Mrs. Janson conceived the idea of leaving him a part of her estate, which consisted of the real property mentioned and some personal property to the value of possibly $3,000. In November, 1906, she gave oral directions to her attorney to write her brother and offer him her home on condition that he would come to Seattle to live. The attorney thereupon wrote the brother the following letter:

"November 13, 1906.

"Mr. James Coleman, Sr.,
      "Glenbrook, Lake County, Calif.

"Dear Sir: Your sister, Mrs. Mary Janson, of this city, is endeavoring to arrange her affairs at this time, and asked me to write this letter to you to ascertain from you whether you would be willing to make your home in this city, Seattle, in consideration that she deeded to you as a gift, the home where she has been for some years, and is now living; the same to be your home. The lot is 60x120 feet. Is good property, and has a cottage on it with modern plumbing in it. Please answer me at once on receipt of this. Mrs. Janson has been ill for some time, and is quite ill at this time, and may not last many more days longer. Her condition is such that she may pass away at any moment. Yet, on the other hand she may live for several months. Yours truly,

"Andrew J. Balliet."

Three days later she procured a friend to write to him another letter, fearing the attorney might overlook the matter. This letter was as follows:

"Seattle, Nov. 16, 1906.

"Mr. James Coleman:

"At the request of your sister, Mrs. Mary L. Janson, I write to tell you that she is very ill, has had two light strokes of paralysis, and may have another one at any time. And she is very anxious to see you and wants you and wife to come to her at once. If you decide to come, telegraph at once, and she will telegraph tickets for you and your wife. Do not delay for she is very anxious to get her business settled and if you are here it will simplify business that she wants to settle for you. Telegraph at once on receipt of this letter. Respectfully,             Mrs. M. A. Morse."

To the attorney's letter the brother replied as follows:

"527-8-9 Coleman Bldg., Tel. Main 4321.

"Andrew J. Balliet, Esq., Attorney-at-Law, Seattle, Washington.

"Dear Sir: I received your letter of Nov. 13 on Nov. 18, 1906. I wrote a letter to my sister, Mrs. L. Janson about four days ago and told her that I would try and go up there to see her and start on Wednesday the 21st of November. Dear Sir, you can tell my sister Mrs. L. Janson I will except her kind offer and hope she will be better by the time I get up there. Yours truly, James Coleman, Sr., Glenbrook, Lake County, California."

The brother left with his wife for Seattle at the date named in his letter, arriving there shortly after his letter arrived, and at once took up his abode with his sister, where he continued to reside until her death, which occurred on January 21, 1907. Shortly after his arrival, Mrs. Janson executed a deed in his favor, conveying to him the east 40 feet of lots 1 and 2 in the block above named, delivering it to her executor with instructions to deliver it to her brother after her death. She also at the same time executed a bill of sale in his favor of all her household furniture, which she likewise delivered to

her executor with the same instructions. These instruments were delivered to the brother within a few hours after Mrs. Janson's death. The brother shortly thereafter began this action to enforce a conveyance to him of the remaining 60x80 feet.

It is not shown that the respondent knew anything of the contents of the deed and bill of sale prior to his sister's death, or that he knew of their existence other than in a very general way. Declarations of the sister to the effect that she had given the entire property to her brother, made shortly prior to her death, were shown; also, that in speaking of the place she called "home," she would indicate the entire property. It was shown, however, on the part of the executor, that she offered the land in dispute for sale even after the arrival of her brother in Seattle, and that the brother remonstrated against any sale of the property by her, claiming that it was his by gift. The will of the sister, while disposing of all her remaining property specifically, makes no mention of this real property; it passed under the will, if by will at all, by virtue of the general residuary clause. The trial court held that the respondent was entitled to a conveyance of the remaining part of the two lots, and entered a judgment accordingly. The executor appeals.

It is the appellant's contention that the letter of the attorney did not constitute an offer on the part of Mrs. Janson to convey her home to the respondent in consideration that he would come to Seattle to reside, but was rather in the nature of a preliminary inquiry by which it was sought to ascertain whether or not the respondent would accept of such a proposition should she afterwards make it, and, being so, there was no agreement to give him the land which can be specifically enforced. Unquestionably the letter is capable of that construction, and, standing alone, might properly be. so construed, but the surrounding circumstances make it clear that this was not Mrs. Janson's intention. Her repeatedly expressed desires to do something in aid of her brother, to-

gether with the letter written through Mrs. Morse, make it clear that she intended to proffer him a gift of her home if he would come to Seattle to reside. The respondent was justified in treating it as an offer to give him the property on the conditions named, and when he accepted the offer and performed the conditions, it became a binding contract which equity will enforce. An agreement for a gift of land will not, of course, be enforced on proof alone of the promise to give. This is true whether the promise be oral or in writing. But where the promisee accepts the promise, enters into possession and makes improvements on the land, or does some other act on the faith of the promise which materially changes his condition, the promissor will be required to make good the gift.

We think also the original offer was intended to include the entire property. The letter of the attorney unmistakably includes the whole of it, but the instructions given the attorney were not specific; he was directed to make an offer of "the home," or "this home," and it is thought that the deed she left indicates that her meaning was different from that expressed in the letter. But this description in the deed appears to be an afterthought on her part, arising from the fear that the means she had on hand would not suffice to care for her during her last sickness, and that it might be necessary to sell a portion of the lots to procure additional money for that purpose. But this change of mind could not affect the respondent's rights. If she offered him the entire property on terms that required some change of condition on his part, and he accepted those terms, the gift was complete and could not be afterwards modified by her.

At the delivery of the deed and bill of sale to the brother on the death of his sister, he made no objection to the instruments because of the description of the property, but accepted and recorded them, giving to the executor a writing acknowledging their receipt by him. This is now thought to estop him from claiming a conveyance of the remainder of the lots,

but manifestly his conduct did not work an estoppel.  His conduct could amount to an estoppel only in the case that he agreed to take a part for the whole in settlement of the dispute between the parties, but there is no evidence whatever that such was the condition on which he accepted these papers.

The judgment is affirmed.

HADLEY, C. J., MOUNT, CROW, and ROOT, JJ., concur.